Case No. 23-5409 United States Chamber of Commerce v. Securities and Exchange Commission et al. Oral Argument Not to Exceed, 15 minutes for plaintiff, 3 minutes for amicus, 18 minutes for defendants. Judge Gibbons and may it please the Court, Jeff Wall for the Chamber of Commerce and the Business Roundtable. With the Court's permission, I'd like to reserve 3 minutes for rebuttal. Your Honors, this comment period was extremely rushed, and it shows in the rescission in two respects. First, the agency changed its view of the facts on the ground, as even the District Court recognized. The risks to PFABs went from zero or near zero to quite serious, and PFABs' voluntary practices went from ineffective to partially effective. The rescission doesn't explain those factual changes, which leaves the Commission with a Fox problem. But even setting that to the side, the Commission's rationale doesn't make sense. Why would providing recommendations to companies at the same time you give them to investors, and then passing along to investors the company's responses, if any, delay the timeliness of PFABs' advice, impair their independence, or impose substantial costs on them, when one drills down? The rescission itself never actually says. I welcome the Court's questions, or I'm happy to say more about the merits. I'd like to ask a preliminary question. Is it necessary really to get into the rationale if we find that the time for the comment was not enough? No. The comment period is a sufficient ground alone to vacate the rescission and to send the rule back to the agency. I guess what I'm thinking is, if you didn't have enough time to comment, how could we even say one way or another whether it was rational or not, or arbitrary or capricious or not, given that we don't know what the record would have been had there been enough time? That's exactly right, Judge Bush. The standard, indeed, the near uniform remedy for a violation of the APA's provision of a meaningful opportunity to comment is a vacator of the rule. It goes back to the agency. The agency provides a sufficient comment period to the public, and then it's free to take whatever action it wants, and it would come back up to this Court. That's the right remedy if you have a procedural violation of the comment period.  Now, I haven't really seen any explanation of what would have been presented to the Commission had there been more time. Am I missing something, or do you have something to add, or is that even necessary? Well, so a couple different points. First, harmless error works the same way here it works everywhere else. The party that committed the error has to prove it was harmless. So the burden's on the government, not on the challengers. If the agency did not provide a meaningful opportunity to comment, it's the agency's burden to say that that violation of the APA wasn't harmful. So what the government's going to have to show in order to bear that burden is that no one else would have commented and there was nothing else to say. And here, neither of those things is true. The SEC acknowledges that... Well, so we have a number of cases we cite in the briefs, like Azar out of the Ninth Circuit, the Stevenson case out of this circuit, that say that there's not... The challengers don't have to themselves prove that the error was harmless and that a violation of the adequate comment period will virtually always be an APA violation, because if you didn't provide a meaningful opportunity to comment, that nearly always will result in harm to the public. But here, Judge Bush, I want to put a little bit more meat on the bone, because there was a commenter, the American Securities Association, that would have commented back in 2020, asked for more time, wasn't able to submit a comment here. I believe the SEC concedes all of that. And on your question, what else would they have said, the Chamber said it wanted to provide more data. And indeed, the reason that the Commission gave for not quantifying the costs and benefits was it said the commenters didn't give us the data. What the Chamber has done for other rules, but it takes some time, and what it would have done here is it would have surveyed its members to ask questions like, how often are these proxy firms committing mistakes when they make recommendations about your company's governance? How costly is it to you to try to correct those mistakes? When the mistakes go uncorrected, what kinds of costs do they impose on the companies or on the investors? That's the data that the Commission would have needed to do a cost-benefit analysis, and if the Chamber had had more time, it would have surveyed its members and tried to put that data together. I'm told that those surveys normally take about 30 to 45 days, and here you had a 30-day period, 31 days, 39 if you count it from when they put it on the website, that ran over Thanksgiving and Christmas and year-end reporting deadlines. It wasn't possible to do that kind of work at that point in the year, and I will say, Judge Bush, the most galling thing about it, at least to me, is that the Chair has told Congress we always give 60 days. All right, well, maybe the Commission had a really good reason. But 60 days was in the context of putting it up on the website, wasn't it? That's right. Not necessarily for rulemaking. Well, what the Chair said to Congress was, we give the greater of 60 days from when it goes up on the website, or 30 days when it goes into the Federal Register. And so he was saying, basically, there's not a circumstance in which you don't have 60 days to comment on our rules. Now he said that a few months after they put out the proposal here, but he wasn't talking about a prospective policy. He was saying, that's what we as the agency do. And what's most frustrating to me about this case is, the SEC has never explained why it didn't grant more time. Even its brief to this Court, it's not as if the agency has come forward and said, we have a really good reason for not extending, and here it is. And the reason I think it... They're saying that they gave all this time for the 2020 rule, and they had 10 years for everyone to look at it, and you didn't really need much time, because everyone had already hashed over the issues. But the two rules are different, Judge Bush. The NPRM back in 2020 was, we're going to provide it to companies in advance. And folks walked in and said, if you give it in advance, then you're going to have to go back and forth with the company, it may threaten independence, and it may slow down the ability to ultimately get out your recommendation to the investor. So in the 2020 rule, the Commission said, fine, we'll just do it simultaneously. That way we can't possibly affect timeliness, because you've already given it to the company. And there's no reason to think it will affect independence, because again, you've already given your recommendation to the company. It's out there. And then what was on the table in 2020 was, well, is there a problem with simultaneous review? And that is not something that everybody had looked at back in 2020. And I will say, Judge Bush, I think that sort of goes to the heart of the problem here. I think that they can't satisfy Fox. The district court was right, that's the standard that applies. They don't argue they can meet it. That should be the end of the analysis. But under any standard, even just the normal APA standard on reasoned decision-making, I still don't understand why just giving it to the company at the same time and then passing along an alert that says the company has a response. It can't affect timeliness, because the recommendation's already gone out. Costs have to be minimal. The SEC hasn't tried to quantify them. But what you're talking about is just CCing the company on the cost that they have to do the follow-up. If the company wants to do a rebuttal, the rule requires the PVAB. Do you call them PVABs or PVABs? I call them PVABs or proxy firms, but we can call them PVABs. The PVAB then has to incur the cost of getting the company's rebuttal to the PVAB's recommendation to the investor. That's the cost, isn't it? Well, yes, but I want to drill down on how insignificant that cost is, Judge Bush, and why they haven't tried to quantify it. They have portals and systems already to send out alerts to companies when they want to if they want to update their recommendation. So the systems are already in place. The company has to make a supplemental filing with the SEC through what's called the Edgar system. All that the PVAB does is it just sends out an alert through that system that hyperlinks to the Edgar filing, or at least that's one way that the PVAB can comply. So we're talking about a CC on the initial email, and then we're saying if the company files something supplemental, they have to send out another email or an alert through a system they already have with a hyperlink to Edgar. These are not... Requirement that the PVAB just check in with the company. Oh, by the way, do you have any response? The burden is on the company to get their opposition in. That's right. The company has... I mean, it's quite burdensome on the company because this is normally a compressed time period. The company's got to go very quickly to the SEC, file something, and then call it to the PVAB's attention. And the PVAB just has to send out an alert through a system it already has. Now, the PVAB and the company get received notice of the shareholder proposal to be voted on at the same time. Wouldn't you agree? I'm sorry? When you have a proposal for shareholders to vote on that someone's proposing, it seems like the PVAB would get notice of that at the same time the company does. Is that fair to say? I believe that's right, Judge Bush. I don't know exactly how the PVABs get notice of shareholder proposals, but I mean, they're public, so I believe that's right. If anything, maybe the company gets notice before the PVAB. I think it's near simultaneous in time, but I'm not exactly sure how it works. So the beef here, or the dispute is over when the company finds out when the PVAB, what its recommendation is. That's really the dispute. That's right. So imagine the company says, here are the awards we're going to pay out to our executives at the end of the year. And, you know, Glass Lewis or ISS wants to advise investors, vote up or vote down. When does the company, how does the company find out about the PVAB recommendation if you don't have this rule? I think it finds out indirectly from investors, or sometimes it doesn't. I think my understanding is for smaller companies, sometimes they don't even find out before the vote. There just isn't transparency. That's what the 2020 rule is designed to do. Just let the company know, and if the company has a response, pass it on. That's all you have to do. I'm wondering, does not having to provide the notice to the company give the PVAB actually a more added value, or more that they can offer to the company for consulting, in that if they don't have to tell the company, the only way the company is really going to find out what the PVAB is thinking is to hire the PVAB to be a consultant. Is that fair to say? I think it is fair, and these are the kinds of conflicts of interest that were driving that portion of the 2020 rule change. But I do think it's fair, even on the notice and awareness condition side, to say there is a problem with not having a greater transparency. Problems for the companies and problems for the investors who aren't getting that full mix of information. And I think what this really boils down to is, if the agency had come back in 2022 and said, look, we agree with the way we saw the world in 2020. We agree that the risk to PVABs are zero or near zero. And we agree that their voluntary practices are not doing very much, because they don't do it for companies. It's very sporadic, and it's all a matter of grace. But we just, our priorities have changed. We don't think getting a full mix of. One final question. I'm sorry. One of the, there's case law talking about how the 30 days is not enough. And I think in those cases, there had been some direction by the SEC to limit the type of comments that could be given during the shortened period. And we didn't have a limitation of comments here. Would you agree with that? Yes, there's no limitation on the comments. So what, can't we just distinguish that authority that dealt with shortened periods that said that the shortened period was not enough by virtue of the fact that in those cases, the SEC or whatever the agency was, said that you couldn't comment on everything within this period. So I think the right way to view those cases, Judge Bush, is those were not periods, those were not cases that were really about the comment period. They said, oh, well, there's some technical footfault on the notice. But everybody was still on notice and they had the ability to comment. I don't think those were cases where courts came in and said, other than one case where there was a statutory deadline that the agency had to comply with, so it needed to shorten the period. Otherwise, these are not courts saying, well, you only gave 30 days or less under really, you know, extenuating circumstances, but we still think the comment period was meaningful. I don't think that's what those cases say. They say that where you have some technical footfault, but everybody can still comment, well, that's not itself a violation of the period. And that's right, but it's different from whether you really had the time. And here, because the commission itself says we wanted data and we didn't get it, it seems particularly odd that they wouldn't extend the time period so that people could try to put together the data. And just to finish up, Judge Bush, the one thing I was going to say to you earlier was, you know, the agencies here and their whole defense is we don't have to satisfy FOX, we didn't change our view of the facts, just a policy call. But it's not just a policy call. They didn't come in and say, we don't view getting a full mix of investors as important as we used to view it. They said, we're making a different policy judgment because we think things about the world are different, and that required them to satisfy the FOX standard. But even if I'm wrong about that, I don't think their timeliness, independence, and cost mantra holds up under any standard when you really drill down on what you're talking about. Thank you. Thank you. May it please the court, Christopher Bates for the State of Utah. Twenty-six states filed an amicus brief in this case because we wanted to emphasize to the court the critical public interest at stake. We protect the interests of retail investors in our states, individuals who invest their personal savings in financial markets. Many of us also have public investment vehicles that are PVAP clients. We have a keen interest in ensuring the transparency and accuracy of the information PVAPs provide to us and our residents. I want to ask you, I mean, why can't the market take care of this problem? I mean, you have PVAPs out there. You have, what, five of them at least? I don't know the exact number, Your Honor. Two of the PVAPs, ISS and Glass-Lewis, my understanding is controlled about 97% of the market. Why can't the normal competition of the market take care of it in that you could, I mean, if there's a real need amongst investors to hear the other side of the story, so to speak, why can't a PVAP compete by saying, well, our policy is we do give notice to the company of our recommendations so you can get the full picture of what's going on, investor. Hire us. Why can't we just think the market's going to take care of this problem? Why is there really a need for a rule? I confess, Your Honor, I am not an expert on the intricacies of the PVAP market. As I said, there are two firms that currently have 97%. That's a near monopoly on it. So new entrants coming into it will have to be competing against those two large firms. What does the evidence show about what PVAPs do? Is there any PVAP that does the simultaneous disclosure on their own without a rule? I don't know the answer to that question, Your Honor, off the top of my head. I don't. I'm not aware of that being addressed in either the 2020 or 2022 rule. So I don't know the answer to that off the top of my head. But, again, you know, this is, as Mr. Wall mentioned, this process takes place on a very compressed time schedule. There's a lot of information that has to be sifted. You know, it's very resource intensive. And so for new entrants to come in against these two large PVAPs that control such a large extent of the market would, at the very least, be very, very challenging. Are the disclosure standards of the two dominant PVAPs the same? In terms of the information that they provide to two companies? In terms of their advanced or whatever disclosure they give to the companies. Do they both follow the same? Is there parallel behavior between these two companies? So the rulemakings do describe this. And they do talk about how, in the past, ISS, which is one of the two largest PVAPs, used to, on occasion, have more of a policy of providing information to some companies. Between 2020 and 2022, it reversed that policy. So it has drawn back in terms of... So why isn't that evidence that there is competition in the market as to what information is given to the company? I realize this is an antitrust case, but that's sort of like the elephant in the room, it seems like to me, because you have two companies that control 90% of the market. And I'm wondering whether this disclosure to the companies has any anticompetitive effect on anything. Well, and the example of ISS changing its practices to provide less information, I think actually suggests... the opposite suggests that, given the fact that there are just the two companies, they can, in fact, with the example of ISS, pull back on the information that they were providing, without concern about how that might upset investors or affect their progress going forward, because they didn't have to be worried about, we're not going to provide as many disclosures as people are going to turn away from us. Okay, thank you. I see that my time has expired, Your Honors. Sorry, I took you on a tangent, but that was something on my mind. I see. May I just briefly take 10 or 15 seconds and just sort of mention the three... Take 15 seconds. Okay, thank you. My first point I want to make, Your Honors, was the importance of transparency. The 2020 rule provided more transparency. We care a lot about that. Second, investors need timely information to make informed voting decisions, which the 2020 rule will provide. And third, as Mr. Wall also explained, the Commission did change its view on key facts on the ground. Thank you, Your Honors.  Matra? Matra, yes. Good morning, Your Honors. May it please the Court, Daniel Matra for the Securities and Exchange Commission. The notice and awareness conditions at issue in this case have sharply divided the Commission and market participants from their inception. When it rescinded the conditions in 2022, the Commission gave good reasons for weighing their uncertain, unquantifiable benefits and risks differently than it did in 2020, including, among other things, the overwhelming opposition of the investors they were intended to benefit and the lack of persuasive evidence of systemic inaccuracies in proxy advice. Under Fox and its progeny, that is sufficient to justify a policy change, even when the reassessment is precipitated by a change in administration rather than any new facts or evidence. Let me ask you the first question I asked of your opposing counsel. If we decide that there's not enough time here that was allowed for the notice and comment, doesn't that end the case for our appeal? We don't really need to get into whether or not it was an arbitrary, capricious decision making. I don't think you would have to get into the arbitrary and capricious question. I would be happy to address the notice and comment argument, and you would still have to deal with severability and remedy arguments. Well, if it's a process problem, isn't the normal rule that you vacate the rule? No, the normal rule is when notice and comment, when there's a complete failure to provide notice and comment, the normal rule is to remand with vacateur. But when notice and comment has been provided but there's a deficiency, courts go through the normal remand without vacateur analysis and look at whether the agency could justify the rule on remand. We cite a number of cases in our brief on that. If you think that the notice and comment period here was insufficient under the APA, I obviously want to get to that. How do you respond to the point about it being the government's burden to show that there would not be a change in the rule had there been more time? That's not the case. The case law says that the burden is on the challenger to prove that a claimed error is prejudicial. That's what the Supreme Court says in the Shinseki case. That's what the Fifth Circuit and the D.C. Circuit have held. In the city of Arlington case we cite in our brief and other cases cite in our brief. The cases on which my friend relied for that proposition are ones in which, again, there was a complete failure of notice and comment. In those cases courts have said, okay, you don't have to say what you would have said or how things would have gone different because when there's a complete skipping of a procedural step, that's a problem we don't want to encourage. But there are numerous cases involving deficiencies, not complete failures, ranging in the severity of the problem where courts have found dispositive the fact that the challengers were not able to point to anything that they would have added. And that is the case in spades here. Literally all that we have from the other side on what they would have done differently is pointing to their comment in which they said that they would have provided relevant, that more time would have given them a chance to provide relevant data, but they don't. What about the point about the chamber would have done the survey had they had more time? Again, all that they point to to the commission was that they would like more time to collect relevant data. So that's a new argument on appeal? The stuff about surveys is the first thing I've heard from it in oral argument. Is it in the briefing anywhere? I don't recall that in the briefing either. Again, they just point to their comment. And the point is that the chamber didn't provide any information in their comment to the agency asking for more time about what type of data they were looking for, what analysis they would have done on it, how that analysis might bear on the proposal, and how long it would have taken. So if that kind of totally generic request for more time to collect unspecified data were sufficient to establish harm or to obligate an agency to continue to extend the comment period, that would essentially give commenters the veto power over the agency's choice of comment period because you can always point to some unspecified data. Obviously, it would have been different if they came forward and said, here is some specific analysis we want to do, here's some specific data, but we need more time to do it. And that would have given the commission an opportunity to respond and say, okay, either we don't think that analysis would be relevant and that's why we're not granting it or we're going to grant it or we're going to do the analysis ourselves or whatever. Part of what makes me concerned about the shortened comment time is kind of the sequence of events that led to it. As I understand it, there had been a suit filed in Texas challenging the non-enforcement of the 2020 rule, and it contended that there needed to be some notice and comment before there could be a suspension of that rule. And I think that suit was maybe filed in maybe October or September of 2021, and then September of 2021, I think. And then, lo and behold, the SEC then has this truncated period, 30-day period. They do it in November after this suit is filed down in Texas. It just seems a little suspicious. It seems like perhaps this was a tactic of the SEC to try to maybe moot this district court case down in Texas. How do you respond to that? First of all, there's no basis to reach that conclusion. The commission took another six months to consider the many comments it receives and issue a reasoned release, which is sort of inconsistent with the idea that it was rushing to get this through. And I think it's important to look at the legal standard that applies there if you want to. Is it fair to say, though, that the SEC did do the notice and comment because they saw that this suit had been filed and they thought, well, maybe we do have to have notice and comment after all? No. They came up with a new rule, obviously. They made it a new rule. The commission was going to do notice and comment regardless. I mean, it's under the law. It was rescinding a legislative rule. It had to undertake notice and comment, and it did that here. The Supreme Court has said that if you're going to sort of cast doubt on an agency's motives, you need a strong showing of bad faith or improper behavior. And for the reasons I mentioned and other reasons, including the process that went on here in which the commission carefully considered the decision. If the commission took six months to consider the comments, what was the problem with keeping the 60 days that they had done for the earlier rule? I mean, it seemed like, you know, they still took some time to consider everything. Why not give another 30 days so it would be aligned with what the number of days were for the first rule? I recognize, Your Honor, that the commission could have done that, and you can make arguments in favor of that approach. But as the district court recognized, the legal question under the APA is not whether a longer comment period might have been helpful or more convenient. The legal question is simply whether interested parties were in fact able to comment meaningfully in the time that was given. For decades, courts have said that 30 days is generally sufficient to elicit meaningful comment, even for substantial and complex rule changes. And 30-day comment periods that overlap with holidays, I might add, are not especially unusual. There are plenty of recent examples, including commission rulemakings in the last administration. And most importantly- The fact that there had been 60 days allocated for the 2020 rule, did that not impose some obligation on the SEC to explain why it was going shorter for the next iteration of the rule? Well, the commission, there's no obligation certainly to provide the same comment period. I could point to- But didn't it have an obligation to explain why they were going shorter? Well, they did. I think they did point to the fact, the commission did point to the fact, that it's a more targeted rulemaking. And I think that's true. The factual record, it was a narrower rulemaking. The factual record had already largely been developed in the 2020 rule, so you're not dealing with an apples-to-apples comparison between rules. And the commission was revisiting a relatively narrow policy question involving a subset of the 2020 rules. And as I said, more importantly, when you have a 30-day comment period, which is generally sufficient, if you're looking to figure out whether it was nonetheless inadequate, you're looking at whether interested parties were in fact able to meaningfully comment. And plaintiffs- It doesn't matter that there were commenters who asked for more time? That doesn't factor into the analysis? I don't think so, Your Honor, because the courts have said that the fact that a longer comment period might have been helpful doesn't mean that the APA requires it. The question is still whether interested parties were in fact able to comment meaningfully. And here, all but one of the parties that requested extensions ended up submitting extensive comments. And they point in their reply brief to one association that they claim was unable to comment, but there's no evidence that that party was actually unable to comment. I'm sorry, go ahead. Can I just jump in here? You've set forth the legal standard as to why 30 days was enough and why the commission wasn't necessarily required to do anything beyond that. So this is really just a practical question, and it's a piggyback on Judge Bush's question. Given that there were so many requests and you're going to take additional time, you took up to six months to ultimately make a final determination as to what was going to happen here, what's the harm in allowing some additional time, particularly when you've got the head of the commission testifying before Congress that typically we would allow 60 days? Is there a practical answer to that? I mean, I recognize that there are arguments in favor of a longer time period, but the explanation that the commission gave was that this is a narrower rulemaking and it has that discretion to offer 30-day comment periods. As I've said, that's nothing new, and the question is whether parties were in fact able to meaningfully comment. There's lots of evidence in the record that they were, including the fact that the commission, unlike other agencies, has a general practice of considering late comments and not suggesting that that practice can cure an inadequate comment period. But certainly the fact that the commission received so few late comments in this rulemaking, despite that practice, is at least probative evidence that there wasn't this avalanche of commenters who were trying to comment, would have commented, but couldn't. There were five comments at the end in those six months, and only two meetings that took place in those six months, despite a practice that the commission has recently reiterated in a proxy rulemaking. And even if I can't allay your concerns about the 30-day comment period, which, as I've said, is not particularly unheard of or uncommon, but even if you have some concern, there is still the harmless error analysis that you have to run through, and the plaintiffs haven't come close to meeting their burden to demonstrate harmless error, other than pointing to cases that involve complete failures and pointing out their vague request for more time. What if there had been even less time given, say 10 or 15 days? Would that be a complete failure case? I think courts for decades have dealt with comment periods of less than 30 days differently. They've sort of drawn, given agency's guidance, that when a comment period is less than 30 days, there generally needs to be exceptional circumstances or exigencies that an agency has to point to in order to justify that. But when a comment period meets the APA minimum, then that is generally sufficient. So you're arguing for a per se rule that as long as you have 30 days, you're always good as an agency? No, there's no per se rule. The rule is not per se. There are cases in which courts have done this analysis of looking at whether interested parties were able to comment and found that they weren't, even though the comment period exceeded 30 days. You had at least one here who wanted to comment who didn't. Isn't that right? As I said, we have one who requested an extension. We have no evidence that they were in fact unable to comment. They didn't submit a late comment, even though they could have. There's no evidence about what they might have said. And so when you stack that up against all of the evidence, all of the arguments that we've heard in the litigation on both sides were presented to the commission, and the commission addressed them. I think that's strong evidence that this case is nothing like those cases, those very rare cases in which courts have found 30 days or more not sufficient. I'm sorry. Go ahead. It would seem to me that the recent attention given to the same interested parties that the issues raised here would argue in favor of a short comment period. I mean, there may have been other reasons, but it seems to me that that is an argument for why 30 days was sufficient in this particular situation. I think that's exactly right, Your Honor. The commission had developed the factual record just two years earlier, and contrary to my friend's suggestion, the commission was simply reassessing the policy balance on largely the same set of facts. They can't point to any particular factual findings, specific factual findings in the 2020 release that are inconsistent with the commission's analysis. The commission just drew different conclusions from the evidence about how much weight to give the competing interests. And if I could, I'd like to spend whatever time I can. I should let you spend some of your time on something other than this issue. Thank you, Your Honor. I'd love to talk about the substantive APA challenges. As I was saying earlier, the commission gave multiple good reasons for weighing the uncertain benefits and risks differently, and under Fox and its progeny, that's enough. Fox forecloses plaintiff's argument that the commission had to meet a heightened justification standard in rescinding the conditions. Fox confirms that the APA's traditional reasoned explanation standard applies regardless of whether an agency is writing on a blank slate or changing an existing policy. Fox also recognizes that there may be additional relevant factors that have to be considered under State Farm when an agency changes policy, such as any prior contrary factual findings, in which case the agency's justification may need to be more detailed than if simply writing on a blank slate. Do you agree that the timeliness and independence issues had all been resolved by having it be a simultaneous disclosure? Definitely not, Your Honor. What exactly still existed as to those issues once it had all been changed? First of all, I think it's important to notice that they are only talking about one piece of the conditions, the notice condition about providing simultaneous disclosure and not the awareness conditions. The commission didn't specifically find that providing advice to registrants at the same time was the reason that there were timeliness and independence concerns here. If you look at the specific statements in the 2020 release that they allege illustrate the changed view of the facts or that they allege are inconsistent with the commission's analysis, all of those statements just explain that the notice condition didn't raise the same timeliness and independence concerns associated with giving companies an opportunity to review draft advice before it is sent to investors because the notice condition didn't require that. But elsewhere, in that same release, the commission acknowledged other distinct risks to timeliness and independence potentially implicated by the awareness condition, and it concluded only that it had sufficiently mitigated those risks, not that it had eliminated them. And thus, the conditions as a whole, it said, would result in fewer disruptions and a more limited risk to independence in comparison to the proposal. Apologies, Your Honor. I obviously have more to say about the merits, but if there are no further questions, I would rest on the arguments in our brief and ask you to affirm the district court. Just three quick points. The first on the comment period, Mr. Matro can say that the government's not asking for a per se rule, but given the list of extenuating circumstances here, more fulsome than I've seen in any of the cases, if the court blessed this comment period, I think it would in effect be saying that 30 days is a safe harbor, and as the bipartisan SEC official's amicus brief urges at 26, the court shouldn't adopt that rule. I don't understand why we should bear the burden of harmless error. That would be different from every other context, but I don't think it matters. The question, whoever bears the burden, it's just is there something else that would have been said? There was. I think it's a little unfair for the government to say we don't know what you would have put in because they asked for data when they put out the NPRM, so we all knew what the data was, so when the chamber came back and said we'll give you more quantitative data if you give us more time, everybody understood what we were talking about. It was the data the commission was asking for on how harmful and costly PVAB errors are, and Judge Bush, I was just trying to explain exactly what the chamber would have done, but I think we preserved the argument in front of the commission, and we certainly preserved the argument in our briefs, but there is more that we would have done. Your clients are resource-rich organizations, right? So it's not like a pitiful pro se plaintiff who can't scurry around and marshal resources. I'm not saying you didn't necessarily need justifiably ask for more time. I'm just saying we sort of need to look at who's doing the asking. Totally fair, Judge Gibbons. I don't think it's a money problem. I think it's a time problem. To collect that information from members takes time to get them to respond, and it's hard to get them to do it when you have year-end financial deadlines that they're worried about and working on, and you have the holidays. And so it was time. It wasn't money. I'm not here telling you, like, we couldn't afford it. Is it the length of time or the time of year that's the problem? I think it's both. I think it was a compressed time period, and it was the time of year, and we just needed more time. And then for the commission to come back and complain that nobody provided the data to do a proper cost-benefit analysis seems to me a little rich under the circumstances. Are your clients familiar with the practice of the SEC of considering late comments? I don't know. I mean, I'm not disputing that the SEC has this policy where it considers them as a matter of executive grace. The point was just there are lots of SEC rules out there that everybody's trying to respond to at the same time, and we weren't going to do a study after the comment period had closed just so we could send it in in the hope that the agency would look at it. That's not what the APA requires. It requires that they give us a meaningful opportunity, not that we have to come back if they act unreasonably and try to somehow cure it. On the merits, they did change their views. If you look at the 2020 rule, this is at pages 321 and 347 and 348, the commission said that it had substantially addressed, if not eliminated altogether, the risks to timeliness and independence. They came back, this is at page 733 of the rescission, and said there's a sufficiently significant risk. That's a change, but under any standard, Judge Bush, if you look at page 733 of the rescission, the key sentence to why they do this is we believe. We believe the risks to PVABs outweigh. Then you start to think, well, where's the cash out? It's in a footnote where they just recite some comment letters. This is very thinly reasoned. We would ask that the court vacate. We appreciate your argument. You were not expecting to talk again, were you? No, Your Honor. Well, you look like you wanted to go to the podium. I thought, hmm, I don't think he gets to talk again. You were just getting ready to get up and leave, I guess. Okay. Thank you all for your argument. We'll consider the matter carefully.